John W. Spratley v. The Board of Commissioners of Leavenworth County.

No. 7913.

1. County Treasurer—*Compensation*. A county treasurer cannot legally receive or retain any other or greater compensation for official responsibility and services than the salary expressly allowed by law.

2. ———— *Interest on Public Money*. Money deposited with the county treasurer by a railroad company in proceedings for the condemnation and appropriation of land for a right of way for a railroad is public money, within the meaning of that term as used in paragraph 1716 of the General Statutes of 1889, and the interest paid on such money by the public depository, under an agreement with the board of county commissioners, is the property of the county.

*Error from Leavenworth District Court.*

Action brought by the Board of County Commissioners of Leavenworth county against John W. Spratley, formerly treasurer of that county, to recover interest collected by him upon funds which he had theretofore placed in the public depositories, and which it was alleged he illegally retains and refuses to deliver to his successor. In his answer, Spratley alleged that he had delivered to his successor all public moneys which came into his hands other than such as had been duly paid out by him. He averred that certain railway companies deposited condemnation money with him, which he placed in certain deposi-

tories, and under an agreement with them interest to the amount of $4,519.47 accrued thereon, which, with the consent of the railway companies, he has retained as and for compensation for his trouble and expense in keeping the condemnation money. A trial was had before the court, and the following findings of fact and conclusions of law were made:

"FINDINGS OF FACT.

"1. That the defendant, John W. Spratley, was the county treasurer of Leavenworth county, Kansas, from the second Tuesday of October, 1886, to the second Tuesday of October, 1890, duly elected, qualified and acting as such.

"2. That during the defendant's term of office there was deposited with him in his official capacity by certain railroad companies certain amounts of money commonly known as 'condemnation money,' such money having been deposited with him as county treasurer under article 9, chapter 23, of the Compiled Laws of the state of Kansas of 1889.

"3. That the defendant deposited such funds in the banks in the city of Leavenworth which had been duly designated as depositories of public money by the plaintiff, it having entered into contracts with such banks for the deposit of public money, and the payment by the banks of interest on such deposits.

"4. From the commencement of the defendant's term of office and up to January 7, 1888, the interest upon the condemnation money so deposited, computed at the rate of interest specified in the contracts between the plaintiff and the depository banks, amounted to $1,800, and prior to said last-mentioned date the condemnation money deposited by said county treasurer in said banks was not separated from other moneys deposited by him, so that it could be ascertained either from the books of the bank or from the books of the county treasurer's office how much thereof was deposited with one bank and how much thereof with another; that prior to February 29, 1888, the

18—56 KAS.

interest earned by such deposit of condemnation money with the banks was not kept in any separate account in the county treasurer's books, but it was placed to the credit of the general interest account, which appears in the county treasurer's official records, which account was entitled 'Interest on deposits in bank,' all other interest received by the county pursuant to the contracts with the depository banks being mixed therewith, and placed to the credit of the same account.

"5. On February 29, 1888, the defendant, as county treasurer, opened a new account upon his official records, entitling the same 'Interest on condemnation money deposited in banks,' debiting the old interest account with $1,800, and crediting the new account with such amount. This last-mentioned account commenced with the said item of $1,800, and subsequently accruing interest received from the banks on condemnation money increased the same, until October 14, 1890, it amounted to $4,519.47, at which time the defendant vacated his office, his term having expired. All of said amount was received by the defendant as county treasurer as aforesaid from interest paid by the banks upon condemnation money deposited with them; said banks at all such times having contracts with the plaintiff which constituted them public depositories.

"6. On January 7, 1888, the defendant opened an account in each of the depository banks as J. W. Spratley, county treasurer, condemnation money, to which account he caused to be transferred the $1,800 interest above mentioned, together with the condemnation money in his hands on said date; to which account from time to time interest on that account was credited by the depository banks until the expiration of the defendant's term of office.

"7. The defendant's final semiannual report as county treasurer was filed with the county clerk October 22, 1890, and was for the six months ending October 13, 1890. In this report there is the following statement by the defendant: 'On the 13th day of October,

1890, I had on hand and turned over to C. J. Buckingham, now county treasurer of this said county, all money before that time deposited with me under article 9 of chapter 23 of the Compiled Laws of Kansas of 1885, in all a sum of $16,653.13, received from or for different railroad companies, and belonging thereto as follows, to wit : ( Here follows a statement showing names of railroad companies and the amounts.) I then had and still retain the following amount of interest accrued on some of the last aforesaid and other similar moneys, which I retain and do not turn over because I claim the same is my own money for compensation for taking care of same at request of the railroad companies, to wit : $4,519.47.'

"8. The defendant has never repaid the above sum of $4,519.47, but still keeps and retains the same. All thereof is interest on condemnation moneys deposited with the defendant in his official capacity, and such interest was paid by depository banks of the city of Leavenworth, that is, by banks with which the plaintiff had contracts for the deposit of public money, contemplating the payment of interest. All other funds belonging to the defendant's office were turned over by him to his official successor.

"9. The salary that was due to the defendant during his term of office as county treasurer has all been paid to him in full ; that is, the whole $4,000 allowed him by law has been paid him, otherwise and independent of any of the aforesaid $4,519.47 ; but there was not anything allowed him specifically for any trouble in relation to the aforesaid condemnation, and he never asked for any from the county.

"10. The railroad companies referred to in these findings during defendant's term of office assigned to the defendant what interest they had, if any, in the $4,519.47 retained by him as interest on condemnation money.

"(To which findings of fact, and to each thereof, and to each and every part thereof, the plaintiff duly excepts.)"

"CONCLUSIONS OF LAW.

"1. The treasurer of Leavenworth county is not entitled to more compensation for the performance of official duties from any source than $4,000 per annum, to be paid by the county. (To which conclusion of law said defendant excepts.)

"2. Condemnation money is 'public money' within the meaning of paragraph 1716, General Statutes of 1889, and interest accruing thereon from depositories designated by the board of county commissioners belongs to the county. (To which conclusion of law said defendant excepts.)

"3. The plaintiff is entitled to a judgment against the defendant for $4,519.47, and interest thereon at 6 per cent. per annum from October 14, 1890."

Spratley complains, and brings the case here for review.

*Lucien Baker*, and *L. B. & S. E. Wheat*, for plaintiff in error; *Waggener, Horton & Orr*, of counsel.

*William C. Hook*, and *John H. Atwood*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The compensation of a county treasurer is determined by the number of inhabitants in the county for which he is elected, and as Leavenworth county has a population of over 25,000, the treasurer of that county is entitled to a salary of $4,000. This is the extreme limit of compensation that he can claim or retain for any official responsibility which he may assume, and for every official duty which he may perform. It is, as the statute says, "In full for all services rendered by said treasurer or his deputies," and he is required to report to the board of county commissioners all fees which he may receive for official services performed at the request of others, and the amount

of them is to be deducted from the salary allowed. (Gen. Stat. 1889., ¶ ¶ 1716, 1717.) In another section it is made a felony for the treasurer to use or permit others to use "any public money coming into his possession or under his control from any source whatever by virtue of his official position." (Gen. Stat. 1889, ¶ 1715.) It is within the power of the legislature to fix the compensation of public officers for official service, and to make it unlawful for county treasurers to receive or retain any other or greater reward from any source whatever for the performance of such services. The statutory provisions relating to such officers in effect preclude the treasurer from receiving any compensation or from taking or retaining any reward other than is expressly allowed as salary. The payment to and the retention by a public officer of any private reward, or any compensation other than as expressly provided by law, is contrary to public policy, subversive of good morals, and inconsistent with the pure administration of a public trust. The condemnation moneys were deposited with Spratley as county treasurer, and under the statute it was his official duty to hold and distribute them. We are very clear, therefore, that he is in no sense entitled to take or retain any additional compensation for the discharge of that duty.

Can the county recover the interest on the condemnation moneys that were placed by him in the public depositories? It is insisted on behalf of Spratley that no one other than the owners of these moneys can rightfully claim the interest which accrues on the same, and that they are not public moneys within the meaning of the statute governing deposits. It provides that the

"treasurer shall deposit daily all public money in

some responsible bank, to be designated by the board
of county commissioners, in the name of such treas-
urer as such officer, which bank shall pay such inter-
est on average balances as may be agreed upon by the
board of county commissioners ; and such bank shall
credit the same monthly to the account of said treas-
urer ; and before making such deposits, the said board
shall take from such bank a good and sufficient bond,
in a sum equal to the largest approximate amount
that may be deposited at any one time, conditioned
that such deposit shall be promptly paid on the check
or draft of the treasurer of said county ; and such
bank shall, on the first Monday of each month, file
with the county clerk a statement of the amount of
money on hand during the previous month, and the
amount of interest accrued thereon to said date."
(Gen. Stat. 1889, ¶ 1716.)

It is true, as contended, that the funds deposited do
not belong to the public. If the condemnation pro-
ceedings are regular, the money deposited belongs to
the railroad company until the right of way passes to
the company. If no appeal is taken from the award
of the condemnation commissioners, the right of way
passes to the railroad company, and the right to the
money passes to the landowner. (*Blackshire v. A. T.
& S. F. Rld. Co.*, 13 Kan. 514 ; *C. B. U. P. Rld. Co. v.
A. T. & S. F. Rld. Co.*, 28 id. 453.) It does not appear
that appeals were taken by any of the landowners,
and if none were taken until the time for appeals ex-
pired, the deposits became the property of the land-
owners. Although the condemnation money was not
owned by the public, it nevertheless was public money
within the meaning of the statute requiring the plac-
ing of funds in the public depositories. It is money
paid as the law requires in a public proceeding to se-
cure the accomplishment of a public purpose. It is
placed in the custody of a public officer, who keeps

the same at the public expense.    It is obtained in the
exercise of the sovereign power of eminent domain,
which can only be used for public purposes.    The sov-
ereign power being delegated to the railroad company
makes it a public agency to secure the building of a
highway to carry out a public use.    An important and
essential step in this public proceeding is the payment
or deposit of condemnation money, and the legislature,
which has full power in the premises, has provided
that the amounts awarded as compensation to land-
owners by the public tribunal provided for that pur-
·pose shall be deposited with the county treasurer.    He
holds it as a public officer rather than as the agent of
the railroad companies or the landowners.    The
awards deposited are not loaned to the county, nor
does the county become responsible to the own-
ers of those funds for either principal or interest.
Neither the railroad companies nor the landowners
are entitled to claim from the treasurer any more
than the amounts deposited.    There is no privity
between those owning the fund and the county
which would entitle them to anything for the use
of the money, no more than the owners of re-
demption money could claim interest for the use of
money paid to redeem land from a sale for taxes.    If
the treasurer should fail to pay the money upon de-
mand to one entitled to it, a liability for interest
might arise against him, but so long as the money
remains in the county treasury unclaimed no interest
can rightfully be demanded by the owner.    His only
concern is that the money deposited shall be safely
kept and properly distributed.    The facilities for the
safe-keeping of the money are provided by the county
and at its expense.    The county board designates the
bank in which the money shall be placed, fixes the

rate of interest which shall be paid on the average balances that may be deposited, and the bond of the depository is taken by and in the name of the county commissioners. The public depository is a part of the financial system of the county, the main purpose of which is the protection and safety of the funds placed in the hands of the county treasurer as the law provides. The payment of interest is only an incident to the transaction, and as the county bears all the burden and cost of providing the facilities for the safe keeping of the money, it justified the legislature in authorizing the collection of interest upon the funds placed in the depository. Interest can only be collected where it is specifically authorized by law. There is no statutory provision authorizing the collection of the interest agreed to be paid by a public depository upon condemnation money, redemption money, nor of any other public money lawfully remaining in the county treasury. The statute does provide, however, that the county may arrange for the deposit of all such money in some responsible bank, and may agree with the bank upon the interest which shall be paid, and from the language employed we think the legislature clearly contemplated that the interest accruing on such funds should belong to the county.

The judgment of the district court will be affirmed.

All the Justices concurring.